IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

ECP FINANCIAL II LLC,              )
                                   )
      Plaintiff;                  )
                                   )
vs.                                )          6:13-cv-00920-LSC
                                   )
GERALD WAYNE IVEY,                 )
                                   )
      Defendant.                 )

MEMORANDUM OF OPINION

Before the Court is Plaintiff ECP Financial II LLC's motion to dismiss Defendant Gerald Wayne Ivey's counterclaims for failure to state a claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13.) The issues have been fully briefed by the parties and are ripe for decision. For the reasons stated herein, Plaintiff's motion is due to be granted in part and denied in part.

**I.   Background**[1]

Counter-Plaintiff Gerald Wayne Ivey ("Ivey") is the chief executive officer of

---

[1] In a 12(b)(6) motion, as discussed in more detail *infra*, the Court must read a counterclaim like a complaint. Thus, the Court must accept the factual allegations as true and construe them in favor of the non-moving party. *Chepstow, Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

J&E Land Company, Inc ("J&E").[2] Ivey was also associated with another business, Eagle Storage, Inc ("Eagle"). J&E is the successor by merger to Eagle.

Approximately ten years ago, J&E and Eagle entered into loan agreements with Regions Bank ("the loans").[3] Ivey guaranteed the loans. In 2012, J&E and Ivey notified Regions Bank that they intended to refinance the loans through the United States Department of Agriculture ("USDA"). In December 2012, Regions Bank assigned the loans to ECP South, LLC ("ECP South"). In February and March 2013, J&E made payments to Regions Bank based on an agreement to avoid default while J&E and Ivey sought refinancing through the USDA. On March 25, 2013, ECP South assigned the loans to ECP Financial II LLC ("ECP"), the Counter-Defendant for purposes of this motion. While ECP never notified J&E or Ivey of the assignment, they learned of the assignment to ECP South on March 26, 2013.

On March 26, 2013, certain unnamed individuals representing ECP South entered J&E's premises and provided written documents to J&E's tenants instructing

---

[2] Ivey does not actually plead his relationship to J&E or Eagle in the counterclaim itself. However, he does plead that he was the chief executive officer elsewhere in his answer. In this one instance the Court considers other portions of Ivey's answer in his favor to establish his relationship with the businesses in this action.

[3] The facts alleged in the counterclaim reference two loans, one made to Eagle and one made to J&E. Actions relating to both loans form the basis of the counterclaims in this action. The Court refers to these as the Eagle and J&E loans, but Ivey claims that J&E is the injured business in these counterclaims.

them to make payments to a different person or entity. Then, on April 10, 2013, the *Daily Mountain Eagle* newspaper published foreclosure sale notices on the loans. J&E received a letter on April 24, 2013, notifying it of the future foreclosure sales based on the loans executed by J&E and Eagle. J&E and Ivey sued to enjoin the foreclosure. In this action, ECP has sued Ivey as the guarantor on the loans made to J&E and Eagle, and Ivey has counterclaimed based on theories of wrongful interference with business relations, wrongful foreclosure, and breach of contract.

## II.   Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires "[a] pleading that states a claim for relief," which includes a counterclaim, to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A counterclaim is treated like a complaint for purposes of a motion to dismiss. *Prepmore Apparel, Inc. v. Amalgamated Clothing Workers of Am., AFL-CIO*, 431 F.2d 1004, 1006 (5th Cir. 1970) (analyzing a counterclaim under the same rules of notice pleading as a complaint)[4]; *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1982.

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a [party] armed with nothing more than conclusions." *Ascroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1950 (2009). In order to survive a motion to dismiss, the counterclaim "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating pleadings on a Rule 12(b)(6) motion. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Factual allegations in a counterclaim need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007).

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n*

of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve inferences in that party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

### III.   Analysis[5]

ECP moves to dismiss each of Ivey's counterclaims. The Court examines each in turn.

#### A.   Wrongful Interference with Business Relations

To prove wrongful interference with a business relationship, the plaintiff must show: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the

---

[5] In its analysis, the Court considers solely the content of Ivey's counterclaim and does not consult any other documents. Both parties reference documents that are attached to the original complaint filed by ECP. However, the Court's analysis on a 12(b)(6) motion is generally limited to the face of the pleading and any documents attached to it. *See Brooks v. BlueCross & BlueShield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). ECP, in responding, has not attached the guaranty agreements or other loan documents, although they are attached to the complaint. *See Starship Enterprises of Atlanta, Inc. v. Coweta County, Ga.*, 708 F.3d 1243, 1253 n. 13 (11th Cir. 2013) (noting that a court may review "documents attached to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim"). Given the extent of the documents attached to the complaint, the Court determines that even if it could consider these documents, this should be done at the summary judgment stage after the parties have had opportunities for full discovery.

defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So.3d 5, 14 (Ala. 2009).

Ivey pleaded the *prima facie* elements of the tort by relying on a protected relationship between J&E and its tenants. He contends that ECP interfered with this relationship in two ways—by publishing foreclosure notices in the *Daily Mountain Eagle* that suggested J&E was in default and by appearing on J&E's premises and instructing tenants to pay rent to a person or entity besides J&E. Ivey pleaded that he was damaged because he must now face potential liability under the guaranties. Since he pleaded that ECP South provided written documentation to the tenants instructing them on where to make payments it is plausible to infer that ECP was aware of the relationship between J&E and its tenants.

Additionally, "a plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a 'third party' or 'stranger' to the contract or business relationship with which the defendant allegedly interfered." *Wadell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003). An entity is not a stranger if it is a "participant" in a relationship. *Id.* at 1157. A participant is one involved "in a business relationship arising from interwoven contractual arrangements that include the contract." *Id.* Here, Ivey has arguably pleaded that ECP is a stranger

to the relationship based on his assertion that the loans were not properly assigned to ECP. While it may be unlikely that Ivey will ultimately show that ECP was an invalid assignee, the claim can proceed at this time.

Ivey has pleaded that the harms to J&E impact him as guarantor on the loans. *Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.*, 598 So.2d 844, 849 (Ala. 1992). Although Ivey does not have standing to pursue J&E's rights as a shareholder or executive, he can survive a motion to dismiss by arguing that the interference with J&E has caused damage to him as a guarantor. *Id*. Ivey has pleaded sufficient facts to draw the inference that the interference with J&E's tenants caused J&E to default and has made Ivey liable under the guaranty agreements. ECP may raise provisions contained in the guaranty agreements as a defense, but such will need to be weighed at the summary judgment stage.

Thus, the motion to dismiss the wrongful interference with business relations claim is due to be denied.

### B. Wrongful Foreclosure and Breach of Contract

Ivey also contends that ECP's actions "were an attempt to wrongfully foreclose on J&E and Counter-Plaintiff's properties, and that such actions are a breach of the agreement of the parties." (Doc. 7 at 16.) Since Ivey attempts to state causes of action

for both wrongful foreclosure and breach of contract, the Court must consider the *prima facie* elements of each cause of action to determine whether Ivey has pleaded sufficient facts to state a plausible claim for relief.

### i.     Wrongful Foreclosure

"A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Assoc.*, 607 So.2d 180, 182 (Ala. 1992). The Court notes that Ivey has abandoned this claim by failing to respond to ECP's arguments on the wrongful foreclosure claim in his brief. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.") When Ivey addressed this count, he only addressed the breach of contract claim, which the Court considers below. He failed to rebut ECP's contentions that (1) no foreclosure sale has taken place; and (2) that Alabama law requires a foreclosure sale to take place in order to state a viable claim of wrongful foreclosure.

Even had this claim not been abandoned, Ivey has failed to state a wrongful

foreclosure claim. The plain reading of the terms "uses the power of sale" in the wrongful foreclosure claim establishes that there must be an actual foreclosure sale. *See Buckentin v. SunTrust Mortgage Corp.*, 928 F. Supp. 2d 1273, 1282 (N.D. Ala. 2013). Ivey has not pleaded any facts to suggest that a foreclosure sale has actually taken place. He actually contends just the opposite–that both J&E and Ivey filed suit in state court to promptly prevent the "attempted foreclosure" of J&E's property. (Doc. 7 at 13.) Although he pleaded that the suit was later dismissed by the parties, he never pleads any subsequent facts to suggest that a foreclosure sale occurred.

He relies solely on two notices of future foreclosure sales published in a newspaper as the basis for his claim. From the face of Ivey's complaint, it appears that the advertised sales never occurred. Since Ivey did not plead that a foreclosure sale has taken place, he cannot state a plausible claim that ECP actually abused its exercise or use of the power of sale. The wrongful foreclosure claim is due to be dismissed.

    ii.    **Breach of Contract**

To prove breach of contract under Alabama law, a party must show: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002). As a threshold matter, "'one not a party to, or in

privity with a contract, cannot sue for its breach.'" *Dunning v. New England Life Ins. Co.*, 890 So.2d 92, 97 (Ala. 2003) (quoting *Twine v. Liberty Nat'l Life Ins. Co.*, 311 So.2d 299, 305 (Ala. 1975)). Third party beneficiaries may also be able to sue under a contract. *Russell v. Birmingham Oxygen Serv., Inc.*, 408 So.2d 90, 93 (Ala. 1981).

Ivey pleaded facts that suggest a plausible claim for breach of contract. First, he pleaded facts to suggest that both the guaranties with Ivey and the loans to J&E and Eagle are binding contracts. Although Ivey argued that the assignment to ECP was invalid, the Court reads the complaint to contend alternatively that ECP violated the terms of the guaranties and the loans when they were assigned to ECP. Ivey pleaded that J&E performed under the loans by making payments as due and that ECP failed to perform the appropriate procedures to inform a party that it was in default. Finally, Ivey has pleaded potential damages because he may be liable on the guaranties as a result of J&E's default.

Claims and defenses of the borrower are not available in cases of an unconditional guaranty. *Gov't St. Lumber Co. v. Blacksher*, 553 So.2d 68, 79 (Ala. 1989). However, at the pleading stage Ivey has made a plausible claim that he is invoking his own rights under the guaranties and not solely the rights of J&E. Ivey contends that by breaching its agreement with J&E, ECP forced J&E into a default,

and Ivey is now liable under the guaranties. Thus, at this stage Ivey has pleaded a plausible claim. Although ECP invokes the language of the guaranties to suggest that they are unconditional and bar Ivey's claims, the effect of this language will be fully considered if properly raised in a motion for summary judgment.

For purposes of a motion to dismiss, there is a reasonable inference that Ivey can sue for breach of contract based on the loans and guaranties. A guarantor has standing at the motion to dismiss stage to argue that wrongful acts to a corporation caused harm under their guaranty agreements. *Selma Foundry & Supply Co.*, 598 So.2d at 849. Even if it is unlikely that Ivey will ultimately succeed, he has pleaded enough factual matter to survive a motion to dismiss.

## IV. Conclusion

For the reasons discussed above, ECP's motion to dismiss (Doc. 13) is due to be granted as to the wrongful foreclosure claim and denied as to the breach of contract and tortious interference claims.

A separate order will be entered.

Done this 5th day of December 2013.

_[signature]_

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256